Curia, per

Evans, J.
The only question which I propose to consider in this case is, whether the plaintiff, Henderson, can maintain this action against the defendants. I shall assume, on the authority of Stark ads. McGowen, 1 N. & McC. 387, that the owner of a chartered bridge or ferry may maintain an action against one who sets up a rival bridge or ferry without a charter for so doing, and also that a'legislative grant of a bridge or ferry over Eno-ree river is a franchise, although it is a river not navigable, and the rights of the riparian proprietors extend usque ad medium filum aquae, as was decided in Coats vs. Wadlington. It may be that when the public roads on each side of the river are connected by a bridge, the bridge becomes part of the highway, and the right to collect toll *158 for passing over may be the proper subject of legislative grant. Nor do I think it necessary to inquire whether Henderson’s bridge can be prescribed for as an ancient bridge. It has existed for a long time, more than forty years, but the proprietors have never set up any other claim than that which they have derived from legislative grants. The charter has been renewed from time to time for a term of years. As well might a tenant who has held under leases, regularly renewed, set up a title in fee after his possession has extended to twenty years. I suppose there can be no doubt that under the charters granted to each of these parties by the Act of 1837, both had a right to collect toll from passengers over their respective bridges, and the same rights would have existed after'the bridges were re-built, if they had been constructed on the original sites. The difficulty between them has originated from the fact that, in the re-construction, both bridges have been placed some distance lower down the stream — Henderson’s bridge 200 yards, and Maybin’s bridge upwards of 700 yards. Under these circumstances, the plaintiff, Henderson, has brought his action, and to enable him to maintain it he must establish this proposition, viz: That his bridge, as rebuilt, was within his charter, and Maybin’s was not. To determine this, it is necessary to see what are the terms of the Act of the legislature establishing these bridges as public bridges. By the 6th section of the Act of 1837, 9 Stat. 608, “ the bridge over the Bnoree river, near the site of the old ferry, lately erected by Thomas H. Henderson, is hereby declared to be a toll bridge,” (fee. By the 15th section of the same Act, it is enacted, t£ that a toll bridge is hereby authorized to be erected over Enoree river at or near Littleton's old ferry landing, and the same is vested in Jesse Maybin ; and the commissioners of the roads for Newberry District are hereby authorized and required to lay out, open and keep in repair a new road, leaving the present road at Maybinton; thence proceeding on the lands of Benjamin and Jesse Maybin to the said bridge ; thence down the south side of the river bank to the line dividing Wadlington’s and Noland’s land; thence on the said line,” (fee. It is very clear from the directions given about lay *159 ing out the road on the south side of the river, that the legislature did not contemplate that the bridge should be at or below the line dividing the lands of Wadlington and Noland ; and if the case depended on this, it might be that Henderson could recover. But Henderson’s bridge is in the same predicament. His is no more the bridge which was established as a toll bridge by the 6th section of the Act of 1737, than Maybin’s is the bridge he was authorized to erect, at or near Littleton's old ferry landing, by the 15th section of the same Act. The only difference between them is, that Maybin has erected his new bridge at a greater distance from the original site than Henderson. But I am unable to perceive that this can make any difference. If Henderson had a right to remove his bridge 200 yards, he had a right to remove it a greater distance. Nor am I able to perceive that the fact that the commissioner of the roads advised or assented to the change of the location of Henderson’s bridge, can vary the case. If he could bring the new bridge within the charter by assenting to or advising its erection where it now is, he could do the same if Henderson had removed it a mile or a half mile below. The only difference between them in this particular is, that the commissioner in one case assented before the erection, and in the other he acquiesced in the change afterwards, and 1 understand that it was in evidence on the trial that the whole board of commissioners had excused the Maybins for not working on another road, on the ground that they had worked twelve days on the road leading to Maybin’s bridge ; thereby sanctioning, by necessary implication, the change of road and the location of the new bridge: — so that, if the sanction of the commissioner of roads could substitute Henderson’s new bridge for the franchise granted him by the Act of 1837, he does not stand in any better position than Maybin. It is very clear that the legislature designed to open, by a new road and bridge, a more direct communication between Maybinton and Newberry CourtHouse than the old one by Henderson’s bridge or ferry ; and, as a consequence, intended to take away the monopoly which Henderson had previously enjoyed. So far as the public is concerned, the change in the roads and bridge *160 has been advantageous, as the distance is diminished, and the road is said to be better. He who claims a monopoly to the prejudice of the public should be held to strict proof of right: and such is Henderson’s condition, if, in the view above presented, both bridges, when re-built, were equally without their charters, then Henderson’s bridge was no franchise, and it was no violation of any right in him for Maybin to set up a rival bridge and receive toll from passengers, although he may have used some artifices to divert the travel to his bridge. But there is another view of this case which leads to the same conclusion. A bridge is a connection of the public road on one side of the stream with the public road on the other. The right to collect toll for travelling over this part of the public highway, is the franchise granted to these parties by the Act of 1837. When these bridges were both carried away in 1840,|and were re-constructed at more eligible places, and the public roads made to conform, with the acquiescence of the commissioners of roads and the public in general, who alone had a right to complain, I do not see any objection to considering the new bridges as substitutes for the old ones, and within the meaning of the charters. In this view each had a right to demand toll for crossing his bridge, and the defendants have been guilty of no infraction of the plaintiff’s franchise. But all of my brethren, who concur in the result of this case, do not take this view of the case. The plaintiff claims a right to recover on a very narrow view of the case, viz: that Maybin’s bridge, as rebuilt, was not at a place indicated by the charter; “ at or near Littleton?s old ferry landing.” But this does not aid him, even if it be so, unless he can establish the further proposition, that his bridge, as re-built, is within the terms of his grant under the Act of 1837. I think, if Maybin’s bridge is not within the meaning of the charter, Henderson’s is not: that they both rest on the same footing, and as a necessary consequence the plaintiff cannot recover.
The motion for a non-suit is granted.
O’Neall and Ward law, JJ. concurred.
Butler, J. absent.